# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 2, 2021

Lyle W. Cayce
Clerk

No. 18-60300

Wendy Carolina Castro-Rodriguez,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A206 879 537

Before Ho, Oldham, and Wilson, *Circuit Judges*.
Per Curiam:*

Wendy Carolina Castro-Rodriguez, a native and citizen of Honduras, petitions for review of an order of the Board of Immigration Appeals (BIA) dismissing her appeal from the Immigration Judge's (IJ) denial of asylum and withholding of removal. For the following reasons, the petition for review is DENIED.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 18-60300

Castro-Rodriguez was the primary caregiver and sole parental figure for her nephew, Cristian. In October 2014, while Cristian was visiting his grandparents, two men accosted him, forced him to ingest drugs, and pulled his pants down to carve a symbol of the letter "Y" in his thigh with a knife. Cristian was twelve years old at the time of the attack. Luckily, Cristian escaped. Castro-Rodriguez contends that the perpetrators were members of the MS-13 gang, which is known for targeting young boys for recruitment into the gang.

Once MS-13 discovered that Cristian lived with Castro-Rodriguez, she began to receive threatening calls. During these calls, the caller referenced the attack on Cristian and mentioned information about Castro-Rodriguez's daughter. In an effort to stop the calls, Castro-Rodriguez changed her phone number; however, these efforts proved futile and the calls continued. The caller threatened violence to Cristian, Castro-Rodriguez, and Castro-Rodriguez's daughter if Castro-Rodriguez did not cooperate with handing Cristian over for membership in MS-13. Castro-Rodriguez believed the gang would kill her and the children if she failed to cooperate.

Because she also believed Honduran law enforcement had little capacity to combat the activities of MS-13, Castro-Rodriguez arranged for herself, her daughter, and Cristian to flee Honduras for the United States. They entered the United States without inspection on December 3, 2014. On December 4, 2014, the Department of Homeland Security served Castro-Rodriguez with a Notice to Appear, charging her with being removable under the Immigration and Nationality Act (INA) § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled. Castro-Rodriguez conceded removability at a master calendar hearing on June 3, 2015. On July 9, 2015, she applied for asylum via form I-589.

2

No. 18-60300

The IJ and the BIA both concluded that Castro-Rodriguez failed to meet the "nexus" requirement under 8 U.S.C. § 1158 and thus denied her application for asylum. On appeal, Castro-Rodriguez asserts that this determination was erroneous for two reasons: (1) the factual finding that Castro-Rodriguez failed to establish "nexus" is contradicted by the evidence, and (2) the BIA and IJ's interpretation of the "nexus" requirement under § 1158 is contrary to the unambiguous meaning of the statutory language.

This court reviews the BIA's final decision only, unless the BIA's decision is affected by the IJ's ruling, in which case we review both decisions. *Pena Oseguera v. Barr*, 936 F.3d 249, 250 (5th Cir. 2019) (citing *Sealed Petitioner v. Sealed Respondent*, 829 F.3d 379, 383 (5th Cir. 2016)). We review factual findings for substantial evidence and legal conclusions de novo. *Id.*

To be eligible for asylum as a refugee, an applicant must show that she is a person outside of her country who is unable or unwilling to return "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *see* 8 U.S.C. § 1158(b)(1). This means that the applicant must establish a nexus, i.e., that a protected ground "was or will be at least one *central* reason for persecuting the applicant." *Sealed Petitioner*, 829 F.3d at 383 (internal quotation marks and citation omitted) (emphasis added). While "a statutorily protected ground need not be the only reason for harm, it cannot be incidental, tangential, superficial, or subordinate to another reason for harm." *Id.* (internal quotation marks and citation omitted). In mixed motive cases, then, "persecutors may have legitimate reasons for their actions, but an additional central reason for their actions is persecution on account of a protected category." *Id.*

3

The BIA and IJ did not err either in construing the nexus requirement or in their factual findings that Castro-Rodriguez did not establish a nexus between her alleged persecution and membership in a particular social group. In this case, Castro-Rodriguez asserted that her nuclear family constitutes a "particular social group" for the purposes of seeking asylum. The Attorney General and this court have recognized that a nuclear family *may* constitute a particular social group on a case-by-case basis. *See Pena Oseguera*, 936 F.3d at 250–51 (citing *Matter of L-E-A-*, 27 I. & N. Dec. 581 (U.S. Att'y Gen. 2019)). Regardless of whether Castro-Rodriguez's nuclear family constitutes a particular social group, however, the BIA and IJ determined that the threats in this case were based primarily on MS-13's desire to recruit new members to further its criminal enterprise. The BIA and IJ both further found that familial ties did not sufficiently motivate the gang to target Castro-Rodriguez.

We agree. The record evidences that the gang was primarily motivated by a desire to increase its status by expanding its ranks; threatening Castro-Rodriguez because she stood in the way of the gang's recruitment of her nephew was just "a means to an end." *Matter of L-E-A-*, 27 I. & N. Dec. 40, 45 (BIA 2017), *rev'd in part on other grounds by Matter of L-E-A-*, 27 I. & N. Dec. at 596 (U.S. Att'y Gen. 2019) ("[T]he fact that a persecutor targets a family member simply as a means to an end is not, by itself, sufficient to establish a claim, especially if the end is not connected to another protected ground."). The record also demonstrates that threats like the ones Castro-Rodriguez received are, unfortunately, pervasive in Honduras. This further shows that the gang targeted Castro-Rodriguez not "out of hatred for [her] family," but out of a desire to increase its numbers. *Ramirez-Mejia v. Lynch*, 794 F.3d 485, 493 (5th Cir. 2015). Therefore, under the nexus test, Castro-Rodriguez's alleged protected trait is "incidental, tangential, superficial, or subordinate to another reason for harm." *Sealed Petitioner*, 829 F.3d at 383

No. 18-60300

(internal quotation marks and citation omitted). Accordingly, Castro-Rodriguez has not established that she is eligible for asylum relief.

As for Castro-Rodriguez's claim for withholding of removal, an applicant bears an even heavier burden of proof when seeking withholding of removal than she bears when seeking asylum. *See Orellana-Monson v. Holder*, 685 F.3d 511, 518 (5th Cir. 2012). Thus, an applicant who fails to establish eligibility for asylum likewise fails to establish eligibility for withholding. *Id.* Castro-Rodriguez failed to establish eligibility for either asylum or withholding of removal here. *See id.*

PETITION FOR REVIEW DENIED.