# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 14, 2020

Lyle W. Cayce
Clerk

No. 18-60792

Changsheng Du,

*Petitioner*,

*versus*

William P. Barr, U.S. Attorney General,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A201 204 499

Before King, Stewart, and Southwick, *Circuit Judges*.
Leslie H. Southwick, *Circuit Judge*:

Petitioner Changsheng Du petitions for review of the Board of Immigration Appeals' dismissal of his appeal of the Immigration Judge's denial of asylum. The evidence does not compel a reasonable factfinder to conclude that Du has demonstrated he was persecuted because of his political opinion. The petition for review is DENIED.

## FACTUAL AND PROCEDURAL BACKGROUND

Changsheng Du is a citizen of the People's Republic of China. He was admitted to the United States in February 2011 and had nonimmigrant B-2

status with permission to remain until August 2011. Before August, Du applied for asylum and for withholding of removal, but the application was denied. The government instituted removal proceedings against Du in September 2011. He again sought asylum, withholding of removal, and protection under the Convention Against Torture.

Du's hearing on the merits did not occur until October 2017, and he was the sole witness. The narrative of events comes from Du's testimony. In 2008, he opened a store in China near Chenzhou University that became successful. Government officials and local police would often come in and take small amounts of money or merchandise. Du would often comply with their requests. In 2008, local police asked him to donate money to a charity that he believed was a pretext, but he complied. Beginning in 2010, the local police Chief Ning Ma began insisting that Du sell his shop to Ma at a low price; Du refused. A few months later, after Du finished remodeling his store, the police told Du he could not reopen because the renovation did not meet certain requirements. Du followed those requirements for the next remodel, but Ma refused to allow him to reopen. Ma and Du began to argue at the entrance of the store about the store's renovations and Du's ability to re-open. A crowd gathered to listen. Ma told Du, "I just don't want you to start your business again. If you have the guts, why don't you just go sue me." Du said he wanted to sue. Ma summoned more police officers and claimed that Du was disturbing the "social order." The police began breaking items in the shop, then a "moving company" came and began removing counters and shelves.

Du filed a formal complaint against Ma with the city government and another with the Public Security Bureau of Chenzhou City. A few days later, policemen came to Du's house and took him to the police station. There, he was slapped, kicked, and suspended between two desks while tied to a stick. The officers told Du they wanted "to give [him] a lesson." They told him to

be quiet or else he would "be dead right away."  When Du tried to explain that he did nothing wrong, the officers told him that he must have done something wrong, or he would not have been beaten.  They also told him to confess to avoid more beatings.

After being detained about 80 hours, Du was released.  As a condition of release, he promised not to "petition . . . the government again."  He also paid a fine and promised to report back to the police station each week.  After his release, Du went to the hospital for a check-up, and submitted a medical certificate in his asylum application outlining his injuries.  The date on the medical certificate predated the incident by one year.

The Immigration Judge denied all three claims for relief and ordered Du's removal.  He found that Du was not credible because of inconsistencies between his written application and oral testimony and that Du failed to present reliable and reasonably available corroborative evidence.  The Immigration Judge also found that Du had failed to establish a nexus between his persecution and the protected ground of political opinion.  Du appealed to the Board of Immigration Review.  The Board dismissed his appeal.  For the asylum claim, the Board based its dismissal only on a lack of evidence of a nexus between persecution and political opinion, without addressing whether Du was credible or had presented reasonably available corroborating evidence.  Du now seeks review of the Board's dismissal of his appeal.

## DISCUSSION

Du's petition for review raises three issues, all relating to the denial of his application for asylum.  First, Du argues that the Immigration Judge erred by finding that Du lacked credibility.  Next, he argues that the Board's decision should be reversed and remanded because he presented enough corroborating evidence of a likelihood of future persecution.  Finally, Du

claims that the Board erred in concluding that no nexus existed between Du's persecution and his anti-corruption political belief.

This court has no authority to review an immigration judge's decision unless that decision had some impact on the Board's decision, such as when the Board adopts fact-findings. *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009). We review the Board's legal determinations *de novo* and factual findings for substantial evidence. *Ghotra v. Whitaker*, 912 F.3d 284, 287–88 (5th Cir. 2019). We may reverse the Board's factual findings only if the evidence compels a contrary conclusion, which means that "no reasonable factfinder could conclude against it." *Wang*, 569 F.3d at 536–37.

The Attorney General has discretion to grant asylum to a "refugee." 8 U.S.C. § 1158(b)(1). A refugee is a person outside his country who is unwilling to return because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." § 1101(a)(42)(A). The asylum seeker's political opinion must be "at least one central reason for persecuting" him. § 1158(b)(1)(B)(i).

We begin by combining Du's first two issues. Du claims that the Immigration Judge erred by finding that Du was not credible and that Du's corroborating evidence was an insufficient basis for granting asylum. Our review of the decision, though, reveals that the Board declined to address the Immigration Judge's determinations of a lack of credibility and of corroborative evidence. We therefore have no authority to review those determinations. *See Wang*, 569 F.3d at 536.

The only issue for our review, then, is whether Du sufficiently demonstrated a nexus between his persecution and a political opinion that he expressed. Whether an asylum seeker has demonstrated that nexus is a question of fact. *Thuri v. Ashcroft*, 380 F.3d 788, 791 (5th Cir. 2004). An

asylum seeker must demonstrate not just that the persecutor was motivated in some measure by the asylum seeker's actual or imputed political belief, but that the political belief was "one central reason" for the persecution. *Matter of N-M-*, 25 I. & N. Dec. 526, 531 (BIA 2011); 8 U.S.C. § 1158(b)(1)(B)(i).

We start with whether Du's actions constituted the expression of a political belief, then turn to whether any actual or imputed political beliefs were a central reason for his persecution. Opposition to government corruption may constitute the expression of a political belief. *Matter of N-M-*, 25 I. & N. Dec. at 528. In making this determination:

> First, an Immigration Judge may consider whether and to what extent the alien engaged in activities that could be perceived as expressions of anticorruption beliefs. . . . Next, an Immigration Judge should consider any direct or circumstantial evidence that the persecutor was motivated by the alien's perceived or actual anticorruption beliefs. . . . An Immigration Judge should also consider evidence regarding the pervasiveness of government corruption, as well as whether there are direct ties between the corrupt elements and higher level officials.

*Id.* at 532–33. The asylum seeker must demonstrate that the persecutors knew of his political belief and persecuted him because of it. *Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 351 (5th Cir. 2002).

Du argues that his actions demonstrate the expression of an anti-corruption political belief. He relies in part on his public disagreement with Ma outside his store. He also argues that his official complaints against Ma and the fact that he discussed Ma with members of the community are further evidence of his anti-corruption political opinion.

To support that an anti-corruption political opinion was one central reason for his persecution, Du emphasizes the short time between his filing complaints against Ma and his persecution by the police. Du also sees it as

significant that he was released only after he agreed to stop petitioning the government. He further argues that the Board failed to consider the pervasiveness of corruption of the government at the local level and stressed the fact that the persecutors were not national officials. Together, Du argues that the evidence is sufficient to compel a reasonable factfinder to conclude that he was persecuted because of his anti-corruption political belief.

In some cases, opposition to corruption may provide evidence of expressing a political opinion. *Matter of N-M-*, 25 I. & N. Dec. at 528. On the other hand, someone may resist extortion for non-political reasons such as wanting to keep his money. *Id.* at 528 n.1. The fact that Du filed a complaint does not by itself tell us his motive. Du's previous acquiescence to local policemen's extortions when they came in his store asking for money or merchandise further undermines his claim of an anti-corruption political belief. One could conclude that Du expressed a political opinion, but the evidence does not compel that conclusion. "The alien must show that the evidence was so compelling that no reasonable factfinder could conclude against it." *Wang*, 569 F.3d at 537.

Likewise, the motivations of the persecutors are uncertain. Here, it was reasonable for the Board to conclude that local officials may have sought to punish Du for threatening their criminal scheme, for filing a complaint against them, or for refusing to sell his store. All of these are personal, not political, reasons to punish Du.

In one of our precedents, the asylum seeker claimed she was raped and physically abused by several officers on account of a political opinion. *Thuri*, 380 F.3d at 790. This persecution occurred after her father had reported those officers to local authorities for seizing a truck of goods that her father was driving. *Id.* at 790. There, the Immigration Judge concluded that the criminals were motivated by personal reasons unrelated to political beliefs.

*Id.* at 791.  On petition for review, the court held that one could disagree with the Immigration Judge's conclusion that the officers retaliated for personal, non-political reasons.  *Id.* at 793.  The evidence as to motive was not so compelling that a reasonable factfinder would have to disagree with the Immigration Judge.  *Id.*  The petition for review was denied.  *Id.*

Here too the evidence could lead a factfinder to conclude either way. On the one hand, Du challenged Ma publicly and filed official complaints against him.  On the other hand, the officers could have been motivated by personal reasons arising out of their interactions with Du.  Because a reasonable factfinder would not be compelled to conclude that Du was persecuted for political rather than personal reasons, Du has not met his burden for this petition.  *Thuri*, 380 F.3d at 793.

The petition for review is DENIED.