# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 13, 2023

Lyle W. Cayce
Clerk

No. 20-61059

Mercy Naah,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A213 327 855

Before Clement, Oldham, and Wilson, *Circuit Judges*.
Andrew S. Oldham, *Circuit Judge*:*

Mercy Naah, a native of Cameroon, was charged as removable from the United States. She applied for asylum, withholding of removal, and protection under the Convention Against Torture. Naah demonstrated that she is unable or unwilling to return to Cameroon because of past persecution

---

* This opinion is not designated for publication. See 5th Cir. R. 47.5.

on account of her political opinion. Accordingly, we grant her petition for review as to her asylum and withholding of removal claims and remand for proceedings consistent with this opinion. We need not consider her torture claim.

## I.

Mercy Naah is an English-speaking citizen of Cameroon. There, she earned money by selling fuel on the side of the road. The Cameroonian government suspected her of selling fuel to Anglophone separatist fighters and arrested her in September 2017. For over a week, Naah was beaten severely at least sixteen times with machetes, sticks, batons, whips, and guns. The officers threatened to kill her. They tried to obtain information about the separatist rebels. Even after her captors ceased beating her, they refused to give her adequate food. After six to seven weeks in prison, Naah escaped and sought hospital treatment for her injuries.

Naah presented medical records of her hospital visit. The doctors found that Naah had "[s]evere generalized body contusions" and "bruises" from the "serious beating all over [her] body." ROA.256–57. Naah presented signs of "trauma, stress, multiple laceration and pressure sores, generalized body pains and tenderness," and "abundant bleeding." ROA.257. She was admitted to the intensive care unit, where she suffered from "progressive degeneration of consciousness," and received sutures, multiple injections, an IV, and a transfusion of three whole pints of blood. ROA.257–58.

After her hospitalization, Naah continued to live in Cameroon for eighteen months with her nephew in a nearby region, where she found a new job. In June 2019 her sister received a warrant for Naah's arrest, charging Naah with secession. At that point, Naah left the country.

Naah subsequently arrived in the United States without a valid entry document and applied for admission. An asylum officer found that she had

suffered past persecution and had a credible fear of future persecution. The Department of Homeland Security charged her with removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I). Naah conceded the charge. She then filed an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). She claimed fear of persecution due to her political opinion. Importantly, the Immigration Judge ("IJ") concluded that Naah was credible, and the Board of Immigration Appeals ("BIA") did not disturb that finding. Nonetheless, the IJ and BIA concluded that Naah was ineligible for asylum, withholding of removal, and protection under CAT. Naah timely appealed.

We review the BIA's legal conclusions de novo. *See Arulnanthy v. Garland*, 17 F.4th 586, 592 (5th Cir. 2021). We review the BIA's factual findings, including adverse credibility findings and denials of asylum, withholding of removal, and CAT relief for substantial evidence. *See Wang v. Holder*, 569 F.3d 531, 540 (5th Cir. 2009); *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006). Substantial evidence supports a decision unless the alien proves that "the evidence is so compelling that no reasonable fact finder could fail to find the petitioner statutorily eligible for relief." *Mirza v. Garland*, 996 F.3d 747, 752 (5th Cir. 2021) (quotation omitted). The alien does not satisfy this burden where "the evidence could lead a factfinder to conclude either way." *Changsheng Du v. Barr*, 975 F.3d 444, 448 (5th Cir. 2020). But the BIA must address all "key evidence." *Cabrera v. Sessions*, 890 F.3d 153, 162 (5th Cir. 2018) (quotation omitted); *see also Abdel-Masieh v. INS*, 73 F.3d 579, 585 (5th Cir. 1996) ("While we do not require that the BIA address evidentiary minutiae or write any lengthy exegesis, its decision must reflect meaningful consideration of the relevant substantial evidence supporting the alien's claims." (citation omitted)). Under this standard, we will rarely disturb the BIA's determination that an alien is ineligible for relief.

No. 20-61059

## II.

We begin with Naah's asylum claim. To be eligible for asylum under 8 U.S.C. § 1158(b)(1), Naah must prove that she is a "refugee," meaning she "is unable or unwilling to return to . . . [Cameroon] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). And she must establish that her "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting" her. *Id.* § 1158(b)(1)(B)(i). Even if Naah can demonstrate she is eligible for relief, she's not automatically entitled to asylum. *See Gjetani v. Barr*, 968 F.3d 393, 396 (5th Cir. 2020). The decision to grant asylum falls squarely within the Attorney General's discretion and is "conclusive unless manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D).

We find that Naah has met her burden of proof to show that she is eligible for asylum because she has suffered past persecution on account of her political opinion. First, Naah can prove that she suffered past persecution. She not only presented her credible testimony, but she also provided medical records. This evidence unequivocally demonstrates that Naah was severely beaten at least sixteen times while she was imprisoned. *Cf. Gjetani*, 968 F.3d at 399 (compiling cases where an alien was only assaulted once or twice). Her persecutors used all types of weapons—machetes, batons, sticks, whips, and guns. And Naah was beaten so severely that she was still bleeding when she finally escaped the prison and made it to the hospital several weeks later. Her pain was so intense and her blood loss so extreme that she lost consciousness multiple times in the hospital, had to be admitted to the intensive care unit, and had to receive a blood transfusion of three pints of blood.

Second, Naah can demonstrate that she suffered persecution "on account of" her "political opinion." 8 U.S.C. § 1101(a)(42)(A). To demonstrate that nexus, Naah must prove "not just that the persecutor was motivated in some measure by [her] actual or imputed political belief, but that the political belief was 'one central reason' for the persecution." *Changsheng Du*, 975 F.3d at 447 (quoting 8 U.S.C. § 1158(b)(1)(B)(i)); *see also Revencu v. Sessions*, 895 F.3d 396, 402 (5th Cir. 2018). "The relevant question is the motivation of the persecutor." *Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 351 (5th Cir. 2002). Naah must present evidence that the persecutors knew of her political opinion and persecuted her "*because* of it." *Ibid*. A political opinion that is merely "incidental, tangential, or subordinate to the persecutor's motivation will not suffice." *Gonzales-Veliz v. Barr*, 938 F.3d 219, 231 (5th Cir. 2019).

Naah's persecutors imprisoned and beat her because of her political opinion. Naah presented (1) her credible testimony about her political beliefs and the accusations of officers contemporaneous to her arrest and torture, (2) human rights reports of violence against Anglophones in Cameroon, and (3) an arrest warrant charging her with secession. Taken together, this evidence establishes that her "political belief" was "one central reason" for the persecution. 8 U.S.C. § 1158(b)(1)(B)(i). Naah is an Anglophone Cameroonian and a sympathizer to the plight of Anglophones. In recent years, the Cameroonian government has persecuted, attacked, and killed Anglophones, leading Anglophone separatists to respond with violence. Naah was a victim of such government persecution; the Cameroonian military knew she was an Anglophone and targeted her upon suspecting that she was engaging in separatist activities by selling fuel to separatist groups. During her arrest, detention, and beating, Naah's persecutors accused her of being an "Anglophone causing problems in the country" and "supplying [fuel] to Southern Cameroonian fighters." ROA.157, 272–73. And her arrest

No. 20-61059

warrant charges her with "secession." ROA.250. It's clear that the military officers "imputed [a] political belief" to her, and this political belief was one central reason behind her persecution. *Changsheng Du*, 975 F.3d at 447. Accordingly, we find that substantial evidence does not support the BIA's determination and Naah is eligible for asylum.

We hasten to add that this is one of those extremely rare cases where we depart from the BIA's eligibility decision. We only do so in these circumstances because "the evidence is so compelling that no reasonable fact finder could fail to find [Naah] statutorily eligible for relief." *Mirza*, 996 F.3d at 752 (quotation omitted).

III.

Next, we evaluate Naah's withholding of removal claim. She qualifies "if the Attorney General decides that [her] life or freedom would be threatened in [Cameroon] because of [her] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). A finding of "past persecution" creates a "presumption" that "the applicant's life or freedom would be threatened in the future in the country of removal." 8 C.F.R. § 208.16(b)(1)(i). But importantly:

> This presumption may be rebutted if an asylum officer or immigration judge finds by a preponderance of the evidence:
>
> (A) There has been a fundamental change in circumstances such that the applicant's life or freedom would not be threatened on account of any of the five grounds mentioned in this paragraph upon the applicant's removal to that country; or
>
> (B) The applicant could avoid a future threat to his or her life or freedom by relocating to another part of the proposed country of removal and, under all the circumstances, it would be reasonable to expect the applicant to do so.

6

No. 20-61059

*Ibid*. Because we find that Naah's past persecution renders her eligible for asylum, we remand her withholding of removal claim so that the IJ may determine in the first instance whether the presumption of future persecution has been rebutted.

IV.

Finally, Naah seeks CAT relief. It is unclear whether the BIA considered all the relevant evidence regarding country conditions in Cameroon. *See Emmanuel-Tata v. Garland*, 2022 WL 126982, at *2–3 (5th Cir. Jan. 12, 2022) (remanding similar CAT claim involving Cameroonian government's mistreatment of Anglophones to allow BIA to consider relevant country-condition evidence). But we need not decide the CAT claim given our disposition of Naah's claims for asylum and withholding of removal. If Naah ultimately prevails on her non-CAT claims, she "can be afforded effective relief by facilitation of [her] return [to the United States], along with restoration of the immigration status [she] had upon removal." *Nken v. Holder*, 556 U.S. 418, 435 (2009). That would obviously moot her need for CAT relief. And if the BIA denies relief on remand, Naah can seek relief from that order, and we can consider the CAT question at that time. *Cf. Ramirez-Ortez v. Barr*, 782 F. App'x 318, 321 (5th Cir. 2019) (per curiam).

\*    \*    \*

For the foregoing reasons, the petition for review is GRANTED.